

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00206-CR

———————————————

JARED FREDRICK WADE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1523164D

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Appellant Jared Fredrick Wade appeals his sentence of ten years' imprisonment for causing bodily injury to a child.[1] In a single point, Wade asserts that his sentence is grossly disproportionate to the offense. We will affirm.

## I. Background

In November 2018, Wade, pursuant to a plea bargain, pled guilty to causing bodily injury to a child, a third-degree felony. Under the terms of his plea agreement, Wade received deferred adjudication and was placed on ten years' probation.[2]

In November 2021, the State, alleging seven probation violations, filed a petition to proceed to adjudication. Specifically, the petition alleged that Wade had violated the terms of his probation by: (1) committing the new offense of "improper photo/video bath/dress room" in June 2021; (2) consuming alcohol; (3) submitting a diluted urine sample; (4) testing positive for alcohol; (5) failing to pay sixteen months of community supervision fees; (6) failing to provide a urine sample as instructed; and (7) failing to pay lab fees in the amount $100.

In December 2021, the trial court held a hearing on the State's petition to proceed to adjudication. Wade pled "not true" to all seven of the alleged probation violations. The State called four witnesses: two to testify primarily about the new

[1]The original complaint alleges that Wade struck the child with his fist.

[2]In addition, Wade was required to pay a $1,000 fine and court costs.

improper video offense and two probation officers to testify regarding the remaining alleged violations.

## A. Improper Video Offense

KW (Mother)[3] testified that she had previously been married to TW (Father) and that they have three children: CW (age 17), TW (age 14), and PW (age 12). Father worked for Wade and after divorcing Mother, moved into a shed behind Wade's house. Wade has children who are friends with Mother and Father's children. Mother would occasionally allow her children to visit Wade's property and sometimes spend the night. Mother testified that Wade and her daughter TW regularly communicated via text. Mother and TW both testified that Wade would purchase things for TW and take her to stores, tanning salons, and a gym known as "Lifetime."

In June 2021, all of Mother and Father's children and some of their friends were at Wade's house for a cookout. Preparing for other guests to arrive, Wade paid TW to clean his house. While cleaning, TW found a camera in the upstairs bathroom—the one that she and her friends expected to use while at Wade's house.[4] The camera, which was hidden in a Clorox bottle inside a trashcan, was pointed towards the toilet and the shower. It was plugged in, hot to the touch, and had a blue

---

[3]To protect their sensitive data, we refer to Mother and her family by their initials. *See* Tex. R. App. P. 9.10(a)(3).

[4]TW testified that she, her brother, and their friends planned to stay at Wade's house overnight and that they would be showering in Wade's upstairs bathroom.

light. When TW questioned Wade about the camera, he said that he had placed it in the bathroom because there were going to be strangers in his house and he wanted to protect against theft.[5]

## B.  Other Probation Violations

Tamara Battle, who was Wade's probation officer in 2019, testified that Wade had been placed on probation for the offense of injury to a child; that as a condition of his bond, Wade was not allowed to have contact with children under the age of 17 other than his biological children; and that, while on probation, Wade had been arrested for sexual assault of a child. Battle also testified that Wade had submitted a dilute urine sample, that another of Wade's samples had tested positive for alcohol, and that Wade had admitted to consuming alcohol.

Allysa Deleon, who was Wade's probation supervisor from June 2020 to September 2021, confirmed that Wade had submitted a dilute urine sample and had failed to provide another required urine sample. She also testified that Wade had failed to pay certain required supervision and lab fees.

## C.  Adjudication and Sentencing

After hearing the evidence, the trial court found that, with the exception of violation number two (alcohol consumption), the State had proven all of the alleged probation violations by a preponderance of the evidence. Accordingly, the trial court

---

[5]At the revocation hearing, Wade testified that he suspected Father of placing the camera in the bathroom.

adjudicated Wade guilty of causing bodily injury to a child and sentenced him to ten years in prison—the maximum sentence authorized by the Texas Penal Code for Wade's third-degree felony offense. *See* Tex. Penal Code Ann. §§ 12.34(a); 22.04(a)(3), (f).

This appeal followed.[6]

## II. Discussion

On appeal, Wade raises a single point, arguing that his ten-year prison sentence is grossly disproportionate to the offense for which he was convicted.

### A. Applicable Law

"Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (first citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); and then citing *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Indeed, a trial court has "essentially 'unfettered'" discretion to impose any sentence within the prescribed statutory range, *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (quoting *Miller-El v. State*, 782 S.W.2d 892, 895 (Tex. Crim. App. 1990)), and any sentence within the statutory limits is virtually "unassailable" on appeal provided that it is based upon the sentencer's informed normative judgment. *Id.* at 324. However, a narrow exception to this general rule

---

[6]On the same date that he filed his notice of appeal, Wade also filed a motion for new trial, which was overruled by operation of law.

exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). Although the "precise contours [of the gross-disproportionality exception] are unclear," one thing is certain: it applies "only in the exceedingly rare or extreme case." *Harmelin*, 501 U.S. at 998–1001, 111 S. Ct. at 2703–05 (Kennedy, J., concurring in part and concurring in judgment); *see also Simpson*, 488 S.W.3d at 322–23; *Chavez*, 213 S.W.3d at 323–24.

To determine whether a noncapital sentence qualifies for this uncommon and "somewhat amorphous" exception, we engage in a three-step review beginning with a threshold analysis comparing the gravity of the offense to the severity of the sentence. *Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *see also Chavez*, 213 S.W.3d at 323–24. Assessing the gravity of the offense requires us to consider (1) the harm that the defendant caused or threatened to the victim and to society, (2) the defendant's culpability, and (3) the defendant's prior adjudicated and unadjudicated crimes. *See Simpson*, 488 S.W.3d at 323. We weigh these factors against the defendant's sentence, looking to precedent for guidance as to the constitutional limits of proportional severity. *See Hutto v. Davis*, 454 U.S. 370, 374–75, 102 S. Ct. 703, 706 (1982) (per curiam) (chastising lower courts for extending gross-disproportionality

6

exception beyond the limits of precedent); *McGruder v. Puckett*, 954 F.2d 313, 317 (5th Cir. 1992) (holding sentence was not grossly-disproportionate in light of both the Supreme Court's and the Fifth Circuit's precedent). In the rare case in which this threshold analysis indicates gross disproportionality, we proceed to steps two and three by comparing the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem v. Helm,* 463 U.S. 277, 296–300, 103 S. Ct. 3001, 3012–15 (1983) (applying steps two and three).

## B. Threshold Analysis

As detailed above, the first step in determining whether a noncapital sentence is grossly disproportionate involves comparing the gravity of the offense with the severity of the sentence. *See Graham*, 560 U.S. at 60, 130 S. Ct. at 2022; *Simpson*, 488 S.W.3d at 323; *Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.). However, Wade has not presented any arguments or cited to any evidence in the record concerning the gravity of his offense—causing bodily injury to a child. Rather, employing a bit of legal legerdemain, Wade argues that his ten-year sentence is grossly disproportionate to "the *technical probationary violations* [that he] committed."[7]

---

[7]Though not raised as a separate point, Wade asserts that the evidence was insufficient to support the trial court's finding that he had violated his probation by committing the improper video offense. However, to prevail at a revocation hearing, the State is only required to prove one probation violation by a preponderance of the evidence. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Smith v. State*, 286 S.W.3d 333, 342 (Tex.

[Emphasis added.] This is not the correct test. *See Bolar*, 625 S.W.3d at 666; *see also Buerger v. State*, 60 S.W.3d 358, 365–66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (correcting appellant's erroneous assumption that "he received fifteen years' confinement for a curfew violation" and pointing out that appellant's 15-year sentence rested upon adjudication of guilt for crime alleged, not appellant's violation of probation requirements that led to revocation of deferred adjudication); *Knight v. State*, No. 14-02-00615-CR, 2003 WL 1988555, at *2 (Tex. App.—Houston [14th Dist.] May 1, 2003, pet. ref'd) (not designated for publication) (addressing constitutionality of appellant's 25-year sentence based on offense of aggravated sexual assault of a child, not based on appellant's violation of probation requirements that led to revocation of deferred adjudication). Having failed to address the gravity of his offense—an essential part of the threshold analysis for determining whether a sentence is grossly disproportional—in his briefing, Wade has arguably forfeited the issue. *See* Tex. R. App. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (holding that appellant's point of error was "inadequately briefed and presents

Crim. App. 2009); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd). Thus, to win on appeal, an appellant must successfully challenge all grounds for revocation. *Guerrero v. State*, 554 S.W.3d 268, 274 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Because the record supports the trial court's findings that Wade committed all but one of the other probation violations alleged in the State's petition—and Wade does not challenge these findings on appeal—we need not consider his challenge to the finding that he committed the improper video offense. *See id.*; *see also Alexander v. State*, No. 04-20-00480-CR, 2021 WL 6053736, at *2 (Tex. App.—San Antonio Dec. 22, 2021, no pet.) (mem. op., not designated for publication).

nothing for review as this Court is under no obligation to make appellant's arguments for her"); *Jessop v. State*, 368 S.W.3d 653, 681, 685 (Tex. App.—Austin 2012, no pet.) (holding that because appellant failed to proffer any argument or authority with respect to his claims, he waived any error as to claims due to inadequate briefing).

Nevertheless, even setting aside the inadequate briefing issue,[8] Wade's disproportionality argument fails on the merits. Under the *Simpson* factors, the gravity of Wade's offense is high. *See* 488 S.W.3d at 323. First, Wade's crime—striking a child with his fist—is a serious offense, harming not only the victim but also society, which has a vested interest in protecting its most vulnerable members. Second, because Wade pled guilty, his culpability for the underlying crime is clear. Third, the record reflects that Wade has been charged with several additional crimes, including aggravated sexual assault of a child, continuous sexual abuse of a child under age fourteen, and sexual assault of a child under age 17. Based on the three threshold factors, we conclude that Wade's ten-year sentence—which is within the statutory range—does not give rise to an inference of disproportionality. Because Wade's disproportionality argument does not pass the threshold test, we need not compare

---

[8]Because we overrule Wade's sole point on the merits, we need not address whether he has forfeited the issue. *See, e.g.*, *Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (expressly declining to decide whether an objection was required to preserve error on an issue because it could be overruled on the merits); *Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 n.4 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) ("Because we overrule this point of error on the merits, we do not address whether error was preserved.").

his sentence to others for the same offense in Texas and elsewhere. *See Bolar*, 625 S.W.3d at 666; *see also Nunnally v. State*, No. 03-19-00807-CR, 2021 WL 4995502, at *5 (Tex. App.—Austin Oct. 28, 2021, no pet.) (mem. op., not designated for publication).

We overrule Wade's sole point.

## III. Conclusion

Having overruled Wade's sole point, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: February 9, 2023